**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| PETER LEUNG, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br>   vs.<br><br>BLUEBIRD BIO, INC., NICK LESCHLY, and CHIP BAIRD,<br><br>        Defendants. | Civil Action No.: 1:21-cv-10335-DJC<br><br>CLASS ACTION |

## <u>NOTICE OF SUPPLEMENTAL AUTHORITY</u>

PLEASE TAKE NOTICE that Lead Plaintiff Jerry R. Hannah ("Plaintiff") submits as supplemental authority in further support of his Opposition (Dkt. No. 34) to Defendants' Motion to Dismiss (Dkt. No. 30), the opinion from the First Circuit of the United States Court of Appeals in *Constr. Indus. and Laborers Joint Pension Trust v. Carbonite Inc., et al.*, No. 20-2110, --- F.4d ---, 2021 WL 6062622 (1st Cir. Dec. 22, 2021). Plaintiff attaches a copy hereto as Exhibit A. The First Circuit issued its opinion in *Carbonite* after the December 15, 2021, oral argument on Defendants' motion to dismiss in this case.

In *Carbonite*, reversing the district court's order of dismissal, the First Circuit found that the complaint adequately pleaded falsity and scienter. The *Carbonite* complaint alleged that the defendants "must have known," or were at least highly reckless in not knowing, that a product highly touted by the defendants was not functional. *Id.* at \*5. The *Carbonite* plaintiffs' primary support for this argument was that "the product's professed importance to the company strongly implied that senior officers at the company were following it closely and thus were aware of its failings." *Id.* As the First Circuit found, "'the importance of a particular item to a defendant can support an inference that the defendant is 'paying close attention' to that item,' if 'that close

1

attention would have revealed an incongruity so glaring as to make the need for further inquiry obvious.'" *Id.* at \*6 (quoting *Loc. No. 8 IBEW Ret. Plan & Tr. v. Vertex Pharms., Inc.*, 838 F.3d 76, 82 (1st Cir. 2016)). The First Circuit found that the "relevant point" was that "the company thought it important enough to warrant two specific plugs from top management, thereby creating a very strong inference that the senior executives who gave those apparently prepared remarks touting the product would have paid at least some attention to the product's status." *Id.*

Here, as in *Carbonite*, Plaintiff alleges that LentiGlobin for SCD was the blockbuster among bluebird's "core four" therapies in development, Complaint (Dkt. No. 26) ¶34, and that the transition to manufacturing LentiGlobin for SCD using the new suspension method was critical to both scalability and profitability of the drug. *Id.* ¶¶39-45. Plaintiff also alleges, as in *Carbonite*, that bluebird and its executives repeatedly touted LentiGlobin for SCD, the transition to the suspension manufacturing method, and how the transition would not "stand[] in the way" of the accelerated timeline for BLA submission to the FDA, *see id.* ¶¶53-55, 57, 59, 61, "thereby creating a very strong inference that the senior executives who gave those apparently prepared remarks touting the product would have paid at least some attention to the product's status." 2021 WL 6062622, at \*6.

The First Circuit continued that in addition to the inference that Defendants paid attention to the product they were touting, "the complaint must allege particular facts strongly suggesting that that attention exposed [Defendants] to information that either rendered their public statements false or necessarily invited further investigation." *Id.* Here, Plaintiff alleges that Leschley assured investors in response to an analyst's question that the transition to the suspension method would not "stand[] in the way" of the accelerated timeline, Complaint ¶61, implying that he had (or should have had) knowledge about the comparability studies which bluebird explained it "will be

required" to conduct based on its "engage[ment] with regulatory agencies." (Dkt. No. 32-14 at 44). The only way bluebird could maintain the accelerated timeline was through using only healthy donor cells in its comparability studies, which "clearly don't allow us to be able to check the actual resulting potency of the drug product." Complaint ¶105. These particularized facts are sufficient under the First Circuit's holding in *Carbonite* to support a strong inference of scienter.

Additionally, in *Carbonite*, the First Circuit had "no trouble finding that the complaint adequately alleges facts raising a reasonable inference that [the product's] ability to perform was a significant part of the total mix of information considered in evaluating Carbonite as an investment." 2021 WL 6062622, at *5. As such, the First Circuit found that the fact "[t]hat Carbonite's most senior officers promoted this new product to investors … further reinforces the conclusion that the complaint adequately alleges" that the omitted facts about the product were material. *Id*. This reinforces that a duty exists to disclose clearly material information.

In the context of disclosing bluebird's discussions with regulatory agencies about "data that we will be required to collect to demonstrate comparability" among manufacturing methods, the use of only healthy cells—the only way bluebird could show comparability in time to submit its BLA in 2021—was clearly material. Defendants promoted LentiGlobin for SCD as a blockbuster among bluebirds' "core four" products under development, touted the transition to the suspension manufacturing method, disclosed the necessity of a comparability study, and directly addressed the relationship between the manufacturing transition and the accelerated timeline. Omitting that bluebird's comparability study would use only healthy cells which could not show potency, defying the applicable FDA guidance, was material. Defendants' severely reckless failure to disclose those facts and that the 2021 BLA timeline was dependent on the Company's use of healthy cells that could not show potency is actionably misleading.

3

Dated: January 5, 2022

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: */s/ Joshua Baker*
Jacob A. Goldberg (*pro hac vice*)
Joshua Baker (BBO #695561)
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19047
Telephone: (215) 600-2817
Fax: (212) 202-3827
Email: jgoldberg@rosenlegal.com
Email: jbaker@rosenlegal.com

*Lead Counsel for Lead Plaintiff and the Class*

4

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 5, 2022, a true and correct copy of the foregoing NOTICE OF SUPPLEMENTAL AUTHORITY was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ *Joshua Baker*